United States District Court
Southern District of Texas
**ENTERED**
April 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SERGIO AND MARIA WEITZMAN, § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-21-1871 |
| § | |
| ALLSTATE VEHICLE AND PROPERTY, § | |
| INSURANCE COMPANY § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

The plaintiffs, Sergio and Maria Weitzman, bottle wine in Argentina and sell it, for money, to and through their Texas company, Serca Wines, LLC. The Weitzmans live in Houston, Texas. In 2019, a fire destroyed 7,727 bottles stored in Argentina awaiting shipment to, and sale from, the United States. The Weitzmans made a claim under their Allstate homeowner's insurance policy, which covered their Houston condominium. The policy covered damaged personal property located away from the residence, but with a business property coverage limit of $200.00. Allstate paid $200.00. The Weitzmans, representing themselves, sued for breach of contract. They allege that their wine business is a "hobby" and that the 7,727 lost bottles were personal property, not used or intended to be used in a business. They sued for the policy limits of $303,000. (Docket Entry No. 1-3).

After discovery, in which the Weitzmans participated slowly and incompletely and only under court order, Allstate moved for summary judgment. (Docket Entry No. 25). The Weitzmans filed a response and cross-motion, and Allstate replied. (Docket Entry Nos. 28, 30).

The undisputed facts in the record, which includes the tax returns for the relevant period and a few invoices, as well as responses to written discovery, show that as a matter of law, the $200.00 policy coverage limit for business property located away from the insureds' residence

applies. Allstate's motion for summary judgment is granted, and the Weitzmans' motion is denied. Final judgment is separately entered. The reasons are set out below.

I. **The Legal Standards**

    A. **The Rule 56 Standard**

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La.,*

*LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

    **B.**    **Insurance Policy Construction**

Under Texas law, insurance contracts are interpreted under the general rules of contract construction, "and words and phrases contained therein should be given their plain and ordinary meaning." *See Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019) (citation omitted). The court interprets an insurance contract to "effectuate the intent of the parties at the time the contracts were formed." *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 258 (5th Cir. 2017) (quoting *Mid–Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009)).

The interpretation of an insurance contract is a legal determination. *See Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016). If an insurance policy is "worded so that it can be given only one reasonable construction, it will be enforced as written." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). Only when an insurance contract is susceptible to more than one reasonable interpretation may the court resort to the rule requiring adoption of the interpretation most favorable to the insured. *Id.* The fact that the parties disagree as to whether there is coverage or the extent of coverage does not create an ambiguity. *Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*, 756 F.3d 347, 352 (5th Cir. 2014) (citation omitted).

When an insurance contract is not subject to challenge for ambiguity, its interpretation is a question of law for the court, appropriate for summary judgment. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) (quoting *Gonzalez v. Denning*,

394 F.3d 388, 392 (5th Cir. 2004)). In a suit to recover on an insurance contract, the insured bears the initial burden of showing that there is coverage, while the insurer has the burden of proof as to "the applicability of any exclusions in the policy." *O'Quinn*, 906 F.3d at 367 (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)).

Language of a policy exclusion or exception to coverage that the insurer claims is an avoidance or an affirmative defense. *See* TEX. INS. CODE § 554.002. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim is within an exception to the exclusion. *See Vic Mfg. Co.*, 143 F.3d at 193.

## II.    Analysis

This is not a close case. The Weitzmans carried a home insurance policy with Allstate, which provided coverage for their Houston condominium. (Docket Entry No. 25-3). The policy included personal property coverage up to $303,000. (*Id.* at 7). It stated:

> Property We Cover Under Coverage C:
>
> 1. Personal property owned or used by an insured person anywhere in the world. When personal property is located away from the residence premises, coverage is limited to 10% of Personal Property Protection-Coverage C.
>
> . . .
>
> Limitations On Certain Personal Property:
>
> Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under Personal Property Protection—Coverage C. The total amount of coverage for each group in any one loss is as follows:
>
> 1. $  200 – Property used or intended for use in a business while the property is away from the residence premises. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4

(*Id.* at 15 (emphasis omitted)).

The policy defined certain terms that modify coverage:

> **Business**—means any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purpose. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.
>
> However, the following are not considered a **business**: . . . an activity for which an **insured person** does not receive more than $2,000 in total compensation for the 12 months before the beginning of the policy period.
>
> . . .
>
> **Insured person(s)** means **you**, and if a resident of **your** household:
> a) any relative;
> b) and any person under the age of 21 in **your** care.
>
> . . .
>
> **Insured premises**—means . . . the **residence premises** . . . .
>
> . . .
>
> **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

(*Id.* at 12–13).

After investigation, Allstate determined that the wine destroyed in the fire away from the Weitzmans' residence was personal property used or intended for use in a business, which entitled the Weitzmans to $200.00 under the policy. Allstate paid the $200.00. (Docket Entry No. 25-6). The Weitzmans argue that Allstate breached the insurance contract because they were entitled to the full $303,000 personal property coverage amount under the policy. They were not.

The insured has the burden to prove coverage, the insurer has the burden to prove exclusions to coverage, and the insured has the burden to prove exceptions to coverage exclusions. *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009); *see also Vic Mfg. Co.*, 143 F.3d at 193 (the insurer had the burden to prove that the coverage exclusion for damage arising out of the release of pollutants applied but the burden shifted back to the insured to prove that the exception to the exclusion for "sudden and accidental" releases applied).

No one disputes that the Weitzmans are entitled to some coverage. Allstate has the burden to prove that the exclusion to full coverage applies, which includes a limit of $200.00 for personal property away from the residence premises used or intended for use in a business that is "any full- or part-time activity of any kind engaged in for economic gain." (Docket Entry No. 25-3 at 12, 15). The Weitzmans have the burden to prove that the exception to that exclusion applies, which includes an "activity for which an insured person does not receive more than $2,000 in total compensation for the 12 months before the beginning of the policy period." (*Id.* at 12). Allstate has clearly met its burden of showing a coverage limitation to $200.00, but the Weitzmans have not and cannot meet their burden of showing an exception to the coverage limitation.

The 7,727 bottles of wine, worth $434,240, was stored in Mendoza, Argentina, when fire destroyed the wine. (Docket Entry No. 25-5; Docket Entry No. 25-8 at 6). Sergio Weitzman is the owner, manager, and registered agent of "Serca Wines, LLC." (Docket Entry No. 25-7; Docket Entry No. 25-8 at 19). Serca Wines sells wine through its website, www.sercawines.com. The evidence is that Sergio Weitzman pays a company called the Vines of Mendoza to harvest grapes and make wine for him and his wife. (Docket Entry No. 25-8 at 6). As Weitzman stated at a hearing on January 25, 2022, the Weitzmans then sell the wine to their company, Serca Wines,

6

LLC. (*See* Docket Entry No. 29 at 8 (Sergio Weitzman stating on the record that "[o]nly Serca, after buying the wine from me, sells the wine.")).

The evidence is undisputed that the wine is used or intended for use in a business. Under the policy, such use includes any activity for economic gain. The Weitzmans sell the wine to Serca Wines and sell the wine through Serca Wines to third parties. The wine was clearly intended for use in the Weitzmans' business.

The business coverage limitation applies, unless the Weitzmans can prove the exception that they did not receive more than $2,000 in total compensation for the 12 months before the beginning of the policy period, including through their sales to Serca Wines or through money they received from selling the wine through Serca Wines.

The Weitzmans have not met this burden. Coverage began on April 19, 2019. (Docket Entry No. 25-3 at 5). Despite a court order to produce invoices and documentation of the sales between the Weitzmans and Serca Wines, the Weitzmans have failed to produce documentation showing that they made less than $2,000 from wine sales, claiming that they do not create invoices for wines sold to themselves. If anything, the record supports concluding that the Weitzmans made more than $2,000 in the 12 months before April 19, 2019. The Weitzmans admitted that they sold wine to high-end restaurants in Houston, including B&B Butchers, Flemings, Masraffs, Le Colonial, Bisou, and Ouzo Bay. (Docket Entry No. 25-8 at 23). The Weitzmans admitted that they received $88,208 in "revenue (income only)" from their sale of wine in 2017, and $42,111 from their sale of wine in 2018. (Docket Entry No. 25-8 at 11). Serca Wines's tax return for 2018, in which Sergio Weitzman is listed as the sole proprietor, shows gross receipts or sales of $42,111. (Docket Entry No. 25-10). The tax return for 2019, again listing Sergio Weitzman as the sole proprietor, shows gross receipts or sales of $51,703. (*Id.*). At least $6,143.75 of the 2019 sales

7

occurred before April 19, 2019. (*See* Docket Entry No. 25-11 (showing sales of $4,520.00 on March 15, 2019, and $714.45 on March 16, 2019); Docket Entry No. 25-12 (showing sales of $909.30 on April 2, 2019)).

The Weitzmans do not dispute the evidence but offer some arguments for treating the wines as personal property not used for or intended for use in a business. First, it is, according to them, a "hobby," and not done with a "profit motive." (Docket Entry No. 28 at 5). That may be true, but it is a hobby that uses property for business and results in economic gain, generating far more than $2,000 in total compensation during the 12 months before the beginning of the policy period (from April 2018 to April 2019). The Weitzmans rely on *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640 (Tex. 2005), which defined a business pursuits exclusion to policy coverage as requiring a "profit motive." But there, the policy language defined "business" to "include trade, profession or occupation," which is different from the definition of "business" in the Allstate policy at issue here. *Id.* at 643–45.

The Weitzmans argue that total compensation is limited to payment for services, and that the wine they sold in exchange for money was a good, so the payment was not "compensation." Dictionaries and common sense defeat this argument. The compensation the Weitzmans received from their wine sales was their gross receipts or total sales that they received. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining compensation as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages"). The Weitzmans admitted to individually receiving $42,111 in revenue from their sale of wine in 2018. (Docket Entry No. 25-8 at 11). And the tax returns for Serca Wine, signed by Weitzman as sole proprietor, show the gross receipts for wine sales as well over $40,000 in 2018, 2019, and 2020. (Docket Entry No. 25-10). The record evidence supports inferences that total compensation exceeded $2,000 in the

relevant period, and the Weitzmans have not submitted or pointed to any evidence, despite their burden to do so, that they received less than $2,000 in compensation.

The fact that the Weitzmans apparently lost rather than made money on the sales of wine does not make the money they received for selling the wine something other than compensation. The evidence that the Weitzmans did not make a profit when they sold the wine, and that they intended to use the 7,727 wine bottles primarily for "personal use" and for charitable donations does not make the money they received something other than compensation. The evidence that they did not make their primary living by selling wine does not make the money they received from those sales something other than compensation.

Even if the Weitzmans had not admitted that they received income in an amount excluding them from policy coverage except for $200.00, the record also supports treating the Weitzmans as the alter ego of Serca Wines, given the evidence Allstate has identified as to the unity between them. Importantly, "[t]he tax returns Sergio Weitzman produced lists him as the proprietor of 'Serca Wines,' and his personal condominium as the official business address of 'Serca Wines.'" (Docket Entry No. 25 at 12 (citing Docket Entry No. 25-10)). "Under Texas law, a sole proprietorship has no separate legal existence apart from the sole proprietor." *CU Lloyd's v. Hatfield*, 126 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 952 (Tex. 1993). The record includes the following:

- "Inventory sheets for 'Serca Wines' in 2019 show that the corporate entity owned at least 8,600 bottles of wine, including some of the blends destroyed in the fire." (Docket Entry No. 25 at 12 (citing Docket Entry No. 25-13)).

- "Sergio Weitzman stated in his interrogatory responses that he is the client of the Vines of Mendoza and that 'Serca Wines' does not have a relationship with the Vines of Mendoza. However, invoices from the Vines of Mendoza for export costs and winemaking were

- billed to both 'Sergio Weitzman' and 'Serca Wines.'" (Docket Entry No. 25 at 12 (citing Docket Entry No. 25-8 at 8–9; Docket Entry No. 25-14)).

- "The 2018 winemaking invoice for $28,135.50 was billed to both 'Serca Wines' and 'Sergio Weitzman,' but paid for by wire transfer from an account titled 'Serca Wines (0539).'" (Docket Entry No. 25 at 12 (citing Docket Entry No. 25-15)).

- "The first invoice for the 2019 winemaking plan was billed to both 'Sergio Weitzman' and 'Serca Wines,' but was paid for by wire transfer from an account titled 'Sergio Business (5972).'" (Docket Entry No. 25 at 12–13 (citing Docket Entry No. 25-16)).

- "A second transaction in 2019 shows another bill from the Vines of Mendoza in the amount of $19,277. There is no record of the entity that paid the bill, but there is a personal check written from 'Sergio Weitzman' to 'Serca Wines' for $19,277 with a memo that says payment was for 'Farming 2019.' Presumably, this is a reimbursement check to 'Serca Wines' for fronting the cost of the invoice." (Docket Entry No. 25 at 13 (citing Docket Entry No. 25-17)).

- "Interrogatory number 25 asked 'what was your total revenue from the sale of wine bottles in 2018? Your in this context means the listed Plaintiffs in their individual capacity. If this number is the same as Serca Wines LLC's total revenue from the sale of wine bottles, please indicate so.' . . . Plaintiffs' response to interrogatory number 25 was provided in two parts. First, that 'S.W. does not sell. All Serca,' and second, that 'Plaintiffs (NOT Serca Wines LLC) received $42,111 in revenue (income only).' The revenue amount of $42,111 Plaintiffs state they made as individuals was the same amount claimed as Serca Wines' gross receipts or sales in its 2018 tax return. Admittedly, Plaintiffs benefit from Serca Wines' sales. For purposes of summary judgment, there is no functional difference between 'Sergio Weitzman' and 'Serca Wines.'" (Docket Entry No. 25 at 13 (citing Docket Entry No. 25-8 at 11; Docket Entry No. 25-10)).

In short, there is no basis to find that Allstate owes more than $200.00 for the wine the Weitzmans lost in the fire in Argentina. The court grants summary judgment finding no breach of contract.

Because the Weitzmans' breach of contract claim fails as a matter of law, and the Weitzmans do not assert or present evidence that they sustained an independent injury, their claim for extracontractual duties also fails. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) (Under Texas law, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an

10

injury independent of a right to benefits.'" (emphasis in original) (citations omitted)). The court also grants summary judgment finding no breach of extracontractual duties.

### III. Conclusion

Allstate's motion for summary judgment, (Docket Entry No. 25), is granted. The Weitzmans' cross-motion, (Docket Entry No. 28), is denied. All claims are dismissed. Final judgment is entered by separate order.

SIGNED on April 11, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge